May it please the court. The sentencing judge in this case was candid. At the very start of the revocation hearing, before the parties argued about the sentence, he said he'd be imposing a sentence of at least one year in prison, because things have to get ratcheted up on a second revocation. When he was imposing sentence, he said his only option was a sentence between one and two years. And then the most telling was what he said to clarify that, because the prosecutor asked the judge to clarify that he knew the guidelines actually dipped well below a year, since he just said he couldn't give a sentence lower than a year. But the judge didn't make the point that the prosecutor was asking him to make. Instead, he dug in. He said he would not impose the same or a lower sentence on a second revocation as he did in a first revocation sentence. The judge candidly explained his fixed notion that a second revocation sentence has to be longer, that the first revocation sentence essentially acts like a mandatory minimum here. Of course, at a sentencing hearing, the judge, you know, whether it's a revocation hearing or... ...Dill's case coming into the hearing for a provisional viewpoint on it, and that was his provisional viewpoint, although he understood that the guidelines range was different. He certainly understood his discretion. But as I read the transcript, the judge is announcing his views on the case at the top of the hearing, tailored to the specifics of this case, which include the fact that this is repetitive revocation. Sure. Well, there are actually kind of two different points the judge makes at different points in the hearing. One point is that Mr. Dill is going to prison, because the defense sentencing memo had suggested that perhaps he wouldn't need any prison time at all. Right, it's perfectly acceptable for the judge to announce that at the outset and say, you know, I've read your memo, I'm not buying it, let's cut to the chase here. There's nothing that says he can't do that, particularly in this context. But what the judge here said went quite a bit further than that, because in the beginning, again, he said he wasn't considering a sentence less than a year, because things have to get ratcheted up in a second revocation. And then if that had been all he had said, you know, maybe we would have an argument. But then he really clarified that on two occasions as the hearing continued, both when he was imposing sentence, and he said that his only options were one to two years. And then in saying, you know, he's not going to give somebody the same or a lower sentence on a revocation, and he says, I'll say it again, because he had said it earlier in the hearing. And so he really clarified for the record what he was doing, which is distinct from a somewhat similar case in Smith that this court decided, where the judge, you know, at the end of the hearing makes some comments about not being able to go back, not being able to ignore a first revocation hearing. Of course, a judge can't ignore the fact that we're looking at a second revocation. They can't ignore the first revocation. But here the judge went a lot further. From the beginning of the hearing, through the hearing, and at the end, the judge repeated that he couldn't give a sentence lower than a year, because he couldn't give the same or a lower sentence than he'd imposed before. So if he phrased it a little differently, it would be okay, right? If he'd said, if he'd come in and said, if I understand your argument, I think the appropriate disposition here, ladies and gentlemen, is going to be 12 to 24 months, because it seems to me that the second time for a similar violation, the punishment should be more severe than the first. Tell me what you think. That would be perfectly okay, right? If that were all he said, that would probably, yeah, sure, that would be okay, because that would be essentially, you know, probably every judge goes into a sentencing hearing with a range in the back of their mind. But both sort of in reality and expressed to the parties, the judge has to keep an open mind. I mean, we have a sentencing hearing for a couple of purposes, and that's, you know, the judge is trying to do justice in this case. He's listening to the arguments. He's listening to the elocution and trying to come up with a sentence that makes sense. At the same time, the judge is giving the appearance of justice to everyone, and if the judge walks in and says, here's what I have, here's the bottom end of the range, which doesn't go with what the guidelines are asking for, doesn't go with what either of the parties are asking for, which is a lower sentence, then it doesn't serve either of those purposes. Okay, but what you're saying is, in essence, we need to parse that language very, very finely. The difference between coming in with an idea and having a closed mind, right? I don't think you need to parse the language that finely, because I don't think that judges typically talk like this. You know, I think that this judge was making, he was trying to make a very strong point that I won't give the same or a lower sentence on a second revocation. He wanted to make that announcement. Is that an unreasonable view? It's a prejudgment of the sentence in this case. Suppose what we're dealing with is a crack cocaine case, okay, and the government comes in at sentencing and asks for a guideline sentence. And the government, and the judge responds, just what everybody in the room knows, save your breath, I always apply a one-to-one ratio in crack powder comparisons. Doesn't that pose the same kind of problem? Could the government appeal and say, well, the judge was prejudiced, he prejudged the appropriate sentence because he was committed to the one-to-one ratio? I think that's a little bit different, Your Honor, because the judge isn't talking about a number. And it's, I mean, there the judge is talking about. A different range. Sure, it's a ratio that goes into other factors. In a different guideline range. Correct. Why is that any different? Because there are plenty of other factors that go into sentencing. So the judge, if he's saying, you know, I do a one-to-one ratio in all of my cases, if he's still considering the defendant as an individual, he's considering the individual circumstances of the case. He's still got to look at the criminal history. He's looking at everything else going on in the case, and he's got to reach a decision. It's very different than a judge coming in and saying, on a crack cocaine case, I'm not giving a sentence less than five years. I don't do that. So, counsel, come up here and argue for what the sentence should be between five years and the max. That's closer to what's happening here. But there's abundant reference in the sentencing transcript of the judge's individualization of this sentence. And he talked at length about this specific defendant, his history, his characteristics, the fact that he blew a number of chances and breached the trust of the court, et cetera, and the public. I mean, he goes on at length about the individual characteristics of the case. So to the extent that he was starting from the policy that a return customer, so to speak, is going to get at least the same sentence as the last time around, certainly nothing less, as a matter of general principle, he then goes on to talk at length about the individual circumstances of the case and then, in the end, to stick with that preliminary judgment. I would disagree that he talked at length about the individual circumstances. He doesn't really talk about Mr. Dill sort of as a person, what's going on. He doesn't talk about the original crime. He doesn't even really talk about the violations. What he does do is have kind of a more general discussion about, you know, the scourge of drugs on our society and how dangerous this is. But what he doesn't do is really connect that discussion to Mr. Dill. And he certainly doesn't connect that discussion to the 14 months because he's already made clear, and he makes clear again, that he chose 14 months based on a need to impose a sentence that was greater than the 12-month sentence that was imposed before. I'll save the rest of my time. Okay. Thank you, Ms. Fyatt. Mr. Lipscomb. Good afternoon. May it please the Court. I'm Bill Lipscomb from Milwaukee. I represent the United States here. I'm going to start really with Judge Sykes' comment about the judge here having made an individualized assessment of the defendant's characteristics and the facts of the case. It appears to have come into the hearing with an idea of parameters of where the case should end up. He announced them at the beginning. There's nothing wrong with that. What could be potentially wrong with that is if he said, I'm going to sentence you to no less than 12 months no matter what you say. And that's not what he said. He said, really, to the contrary. Page 5 of the transcript is important. I'm just going to read two quick paragraphs here. He says, and so the only question at the end of the day is what ought to be the appropriate sanction. And it's not going to be a year, and it's not going to be two years, but probably something in between. So he's not saying it's fixed, as counsel says. Because when you violate conditions of supervised release, the penalties get ratcheted up. Now, the government recommended eight months, right? That's right. And did the judge question that and say, why are you doing that? He did not judge. No. No? I think it was me. I mean, he's used to me coming in and perhaps making recommendations that might be lower than others. I mean, one would think the government would have a pretty good idea what an appropriate period of imprisonment would be. But he didn't engage you? He didn't ask you why he recommended eight months? He did not judge. I mean, I think that I made it clear in my comments that I think my comments were basically that there's no magic to any of these numbers. Like what? There's no magic to any of those numbers, whether it's eight months or 10 months or 12 months or 14 months. Well, you presumably had a reason for recommending eight months. I mean, really, it's the bottom of the guidelines. But did you give a reason why you thought eight months? Well, I read the transcript on the train down this morning. I think the core of my reasoning would be that we have to start with a parsimony clause, that the sentence should be least restrictive. And so really the question here, I think when I looked at it, was the guy's done 10 years, right? Now he's done another 12 months for a violation of supervised release. He's got a really bad drug problem, right? How much time is necessary to try to correct his behavior? We can all disagree about what that number might be. My recommendation was eight months. Judge's conclusion was that it was 14 months. Now, is he just an addict or is he a dealer? The defendant, I went back and looked at the PSR this morning, Judge. The defendant was a heroin user back in 2001 when he committed the offense of conviction. He was released from prison. Is he just an addict or is he in the drug business? Oh, I see the court's question. There was no indication the defendant was dealing drugs. I think the court made that clear. And this time around there's no supervised release following prison? Correct. Okay. Correct. Just one more thing from the record. Just after noting that the sentence should probably be somewhere in between those 12 and 24 months, the court invites the parties and Mr. Dill to make arguments. And he says, So, Mr. Lipscomb, Mr. Gansner of the Defense Council, Mr. Dill, to the extent that you have some thoughts and an appropriate disposition as to a term of imprisonment, we're not sending Mr. Dill back on the street. Those days are gone. Literally got six categories of violations. He wants to hear, though, from the parties what their thoughts are, right? His mind isn't closed. I think that's clear from the record here. Obviously, we didn't change his mind. I didn't change his mind. The Defense Council didn't change his mind. Mr. Dill didn't change his mind. But the court sentenced the defendant to a reasonable term. It's not plainly unreasonable. Why would the judge start off by explaining his leaning? Doesn't that kind of contaminate the statements that follow? Right? Because they have a framework. You see where the judge is going. And isn't that likely to affect what the lawyers say? Well, it could. It could do it in a good way, right? I mean, as I think Judge Sykes pointed out, if the court comes in, having read the PSR and the revocation hearing report, has a sense for where the court's going and says, hey, this is what I'm thinking, right? Tell me what you think in reference to what my conclusions are about the case, But it's a little awkward for the parties, right? Because he says, this is what I'm thinking. The lawyer is not going to say, well, actually, your thinking is off base. But that is what we said, Judge. That is what we said. That's the next thing that came out of my mouth. Most lawyers, in my experience, want to know that, though. That you want to know so you don't waste time or at least you know what your target is. Right. Yeah. Procedurally, I don't think there's anything wrong with that as long as the court hasn't indicated it's foreclosing, particularly the right of elocution, which the court did not do here. That I'd ask the court to affirm. Okay. Thank you very much. So, Ms. Fite, do you have anything further? Just briefly, Your Honor. The quote that he just raised, the quote is, it's not going to be a year. It's not going to be two years. It's probably going to be in between because things have to get ratcheted up. That's not a probably it's going to be a year. That's a probably it's not going to be either a year or two years. But he's saying it's going to get ratcheted up from one year, and he clarifies that comment later. So I would disagree that that was still sort of a conditional. And then the other point I wanted to make was you had asked, you know, did the judge engage with your argument for only eight months? And I think it's telling that he didn't. He also didn't engage with the defense recommendations and with the elocution, other than to make it very clear to everyone that he did not see a non-incarcerative sentence as a possibility here. But the sentence that he announced at the beginning was the one he was going to give, is the sentence that he carried through to the end with his own notions of how the sentence was going to be done. Thank you. Okay. Well, thank you very much to both counsel, and the court will be in recess until August.